UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 20-61249 -CIV-DIMITROULEAS

JHON SARMIENTO, Individually and
on behalf of all others similary situated,

    Plaintiff,
vs.

SCHEAR CONSTRUCTION, LLC, a
Florida Limited Liability Company,

    Defendant.
_____/

**PLAINTIFF'S *UNOPPOSED* MOTION TO CONDITIONALLY CERTIFY
COLLECTIVE ACTION AND FACILITATE NOTICE TO POTENTIAL CLASS
MEMBERS AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, JHON SARMIENTO ("Sarmiento" or "Plaintiff"), respectfully requests the entry of an Order permitting, under court supervision, notice to all hourly paid "laborers"[1] employed by Defendant, SCHEAR CONSTRUCTION, LLC ("Schear" or "Defendant"), who were paid "straight time" or their regular hourly rate for hours worked over forty (40) in one or more workweeks during the applicable three (3) year limitation period as opposed to the time and one-half overtime to which they are/were due under the FLSA. Defendant does **not** oppose this Motion or the form of the proposed Notice and Consent Forms attached hereto as **EXHIBITS A** and **B**, respectively.[2]

**I.    THE FLSA AUTHORIZES COLLECTIVE ACTIONS**

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. *See* 29 U.S.C. § 216(b). Specifically, the FLSA provides, in part, that:

---

[1] The term "laborer" as used herein refers to all of Defendant's hourly-paid construction workers, regardless of their actual job title, who worked through Defendant's Puerto Rico division.

[2] The Parties have stipulated, that the claims of putative opt-in plaintiffs are tolled as of April 16, 2021 (i.e. the three-year lookback period should go back to April 16, 2018).

1

> An action to recover the liability [for unpaid overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of them self or themselves and other similarly situated. ***No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.***

*See id*. (emphasis added).

"Schear Construction was founded in 1987. Starting out as a small contractor in Florida, Schear has grown into a multi-state commercial and residential contractor. [Schear is] continually expanding our scope to a full range of construction services and [its] coverage to more regions across the United States." *See* Excerpt from Defendant's website, http://www.schearusa.com, attached hereto as **EXHIBIT C**. To facilitate this contracting work, Defendant employed, and continue to employ, hourly paid "laborers" to perform these services at their jobsites. *See* Declarations attached collectively as **EXHIBIT D**. As hourly paid "laborers" Plaintiff, and the other putative class members, were responsible for providing the construction labor that is crux of Defendant's business. *See id.*. Plaintiff, and the putative class members, regularly worked more than forty (40) hours per week, while employed by Defendant on its project in the Virgin Islands. Instead of being paid time and one half her hourly rate of pay for every hour worked as required by the Fair Labor Standards Act ("FLSA"), however, Plaintiff, and the similarly situated laborers simply received "straight time" or their regular hourly rate of pay for all hours worked. Defendant subjected all hourly paid "laborers" at their jobsites in the Virgin Islands to this pay policy.

Plaintiff knows that his claim is typical of the claims of other former and current hourly paid "laborers" employed by Defendant, and typical of the claims of all putative opt-ins identified. *See* Sarmiento Dec. The putative collective consists of any individual who was an

hourly paid "laborer" for Defendant at any site, throughout the Virgin Islands, and who was subjected to Defendant's unlawful pay policy and practices of paying "straight time" for hours worked over forty (40) in one or more workweeks during the applicable three (3) year limitation period as opposed to the time and one-half overtime to which they are/were due under the FLSA. To date numerous similarly situated employees have learned of the case and have already opted in prior to issuance of notice.  This participation alone is enough to satisfy the inquiry as to whether others "desire to join." *See Brasaus v. FreshPoint of S. Fla., Inc.,* No. 15-CV-61529-WPD, 2016 WL 7469979, at *2 (S.D. Fla. Feb. 12, 2016) (DIMITROULEAS, J.) (granting certification with two opt-ins having provided declarations, finding that "[s]uch a showing is sufficient at this stage to demonstrate that other employees desire to opt-in.").  Moreover, Defendant has been sued previously regarding virtually identical allegations[3] and has been the subject of a DOL investigation regarding the jobs at issue here.

Defendant's unlawful compensation policy and practice toward the defined collective of hourly paid "laborers" is class-wide, thereby warranting certification to all "laborers" that Defendant has employed in the applicable statutory period throughout the Virgin Islands. *See* Exhibits B and C, generally.

Based upon the record evidence before this Court pre-notice, Plaintiff has demonstrated that all of the hourly paid "laborers" employed by Defendant in the Virgin Islands are "similarly situated" because: (i) they all had similar job titles; (ii) they all performed similar duties; (iii) they were all paid on an hourly basis; (iv) they regularly worked more than forty (40) hours in a workweek; and (v) they were impermissibly paid "straight time" or their regular hourly rate for all overtime hours worked instead of time and one half as required by the FLSA.  Simply put, all other hourly paid "laborers" within the defined class are owed full and proper payment of

---

[3] *See Perales v. Schear Corp., et al.,* 2:2009cv00669, D.E. 1 (M.D. Fla. Oct. 8, 2009).

overtime wages and the right to participate in this litigation. It is undisputed that Defendant has acted, or refused to act, on grounds applicable to all hourly paid "laborers" in the defined class by failing to pay them full and proper overtime, thereby making the identical relief appropriate with respect to their current and former hourly paid "laborers" within the defined class as a whole. Moreover, the common questions of law and fact predominate over any questions affecting only Plaintiff, and a collective action is superior to other available methods for the fair and equitable adjudication of the controversies between the representatives described above and the named Defendant. And, although the defined class of current and former hourly paid "laborers" is identified and certain, the individual members of the class cannot be completely identified and notified of their right to join this action absent access to Defendant's books and records.

Defendant's above compensation policy and practice (failure to pay proper overtime) is common to all hourly paid "laborers" in the defined class whom Defendant employed in the Virgin Islands. Moreover, these common policies and procedures violate the FLSA's overtime provisions requiring the payment of time and one half overtime compensation for each hour worked over forty (40) in a workweek. That is, because Defendant failed to pay their hourly paid employees time and one half for each hour of overtime worked, such compensation practices have adversely affected the rights of each member of this collective action. Therefore, Plaintiff seeks this Court's authorization to facilitate notice to each of Defendant's hourly paid employees in the defined class who were subjected to the illegal pay practice described above at any time within the last three (3) years, at any site, throughout the Virgin Islands.

Plaintiff further requests that he be permitted to give such notice as approved by this Court to all such class members of their rights to opt-in to this litigation by executing an

appropriate consent as required by Section 216(b) of the FLSA. Plaintiff's Declarataion, along with the Consents and/or Declaration filed by three (3) other Opt-in Plaintiffs, the prior lawsuit and DOL investigation regarding virtually identical allegations, and the other evidence of record, clearly establish that Defendant's other hourly paid "laborers" in the defined class had similar duties, were paid in the same manner (i.e., straight time for all hours worked), and thus, were subjected to Defendant's illegal pay practice described above.

## II.     APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS

FLSA collective actions operate differently than the typical class action suits under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to a similarly situated class of plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case. Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id*. Conversely, in traditional Rule 23 class actions a plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

In *Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165 (1989), the Court ruled that not only did trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential plaintiffs. *See id.*    There, the Court addressed the issue of whether the district court may play any role in prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought. *See id.*   The Court determined that district courts have discretion in appropriate cases to implement 29 U.S.C. §216(b) by facilitating notice

to potential plaintiffs. *See id.* at 486. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *See id.*

Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute. Thus, it lies within the discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time. *See id.* Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. *See id.* at 487. Additionally, the benefits of the class action provisions of 29 U.S.C. §216(b), "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id.* at 486.

In *Dybach v. State of Florida, Department of Corrections,* 942 F.2d 1562 (11th Cir. 1991), the Eleventh Circuit found that an adult probation officer was non-exempt and therefore entitled to overtime compensation for all hours worked over forty (40) in multiple workweeks. *See id.* The Eleventh Circuit also held that the district court had authority to issue an order requiring notice to "similarly situated" employees of the defendant affording them the opportunity to "opt-in." *Id.*

A. **The Conditional Notice Standard is Lenient**

Courts generally utilize a two-tiered approach to certification of an opt-in class pursuant to 29 U.S.C. §216(b). *See, e.g., Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1219 (11th Cir. 2001); *see also Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1212 (5th Cir. 1995); *see also Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095 (10th Cir.2001)(describing two-step method and affirming district court's use of it); *see also Gambo v. Lucent Technologies*, 2005 WL 3542485 (N.D. Ill. Dec. 22, 2005); *see also Clarke v. Convergys Customer*

6

*Management Group, Inc.,* 370 F.Supp.2d 601 (S.D. Tex. 2005); *see also Realite v. Ark Restaurants Corp.,* 7 F.Supp.2d 303 (S.D.N.Y. 1998).  Under this two-tiered approach, the court makes an initial determination, based solely upon the pleadings and any affidavits, whether notice of the action should be given to potential class members. *See id.* at 1218. During Stage I notice proceedings, "[p]laintiffs need show only that their positions are similar, **_not identical,_** to the positions held by the putative class members." *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir. 1996) (internal quotations and citations committed) (emphasis added).

Because the court has minimal evidence at this stage of the proceedings, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. *See Cameron-Grant v. Maxim Healthcare Services Inc.,* 347 F.3d 1240 (11th Cir. 2003)*; see also Pendelbury v. Starbucks Coffee Co.,* 2005 WL 84500, *3 (S.D. Fla. Jan. 3, 2005) (citing *Hipp*, 252 F.3d at 1218).  Moreover, allowing plaintiffs and the putative class members to first proceed through notice and discovery is contemplated by the two tier approach.  *See Leuthold v. Destination Am.,* 224 F.R.D. 462, 467 (N.D. Cal. 2004) ("The two-tier approach contemplates progression through the notice stage before reaching the more rigorous inquiry required to maintain the class.  This is evident from the methods usually employed to decide the issues raised by the two tiers.").

      **B.**      **Plaintiff Demonstrates a Reasonable Basis for a Collective Action**

For purposes of defining the "similarly situated class" pursuant to 29 U.S.C. §216(b), a plaintiff must only demonstrate that the defined class is comprised of employees who are similarly situated to the named plaintiff with regard to the defendants' compensation practices. To satisfy the initial burden regarding notice under 29 U.S.C. § 216(b), "plaintiff[s] need only show that their positions are similar, not identical, to the positions held by the putative class

members." *Hipp*, 252 F. 3d at 1217. see also *Pendlebury*, 2005 U.S. Dist. LEXIS 574, at *8-10 (store managers from two (2) Starbucks' locations in Broward County, Florida granted right to send notice to all similarly situated store managers **across the United States** who may have been misclassified as "exempt"). The "similarly situated" requirement of §216(b) is more elastic and less stringent than the requirements of Rule 23 (class actions), Rule 30 (joinder) and Rule 42 (severance). *Hipp*, 252 F. 3d at 1219; *Pendlebury, supra*; see also *White v. Osmose*, 204 F.Supp.2d 1309, 1315 (M.D. Ala. 2002). A plaintiff merely must demonstrate a "reasonable basis" for a collective action. *Hipp*, 252 F. 3d at 1219

Here, there are questions of law or fact common to Defendant's other hourly paid "laborers" and the claims of the named Plaintiff in the instant matter. Indeed, Plaintiff's claims are typical of the claims of the other individuals in his position(s). For conditional certification to be granted in cases arising under the FLSA, there is no requirement of "strict symmetry" or "absolute identity." See *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F.Supp.2d 1330 (M.D. Fla. 2007) (For certification of collective action, under FLSA, to satisfy similarly situated requirement for opting in, plaintiffs must only demonstrate that their positions are similar, not identical, to the positions of the potential class plaintiffs). Rather, all that is required is a "reasonable basis." *Burks v. Equity Group Eufaula Div. LLC*, 2007 U.S. Dist. LEXIS 79416 (M.D. Ala. 2007) (further citation omitted); see also *Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1270 (M.D. Ala. 2004) ("[P]laintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions."); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1346-51 (N.D. Ga. 2002) (granting certification where "Plaintiffs have made

8

substantial allegations, supported by evidence, that Defendant failed to comply with the FLSA by failing to pay overtime compensation to non-exempt employees on a class-wide basis.").

While Plaintiff has this burden, his burden is "not heavy," and may be met by making substantial class-wide allegations, "that is, detailed allegations supported by affidavits which successfully engage [d]efendant's affidavits to the contrary." *Id.* at 1096-97 (internal quotations omitted); *Hipp*, 252 F.3d at 1218-19. Further, "courts have held that Plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Kreher v. City of Atlanta*, 2006 WL 739572, at *3 (N.D. Ga. Mar. 20, 2006) (*citing Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see also Thiebes v. Wal-Mart Stores, Inc.,* 1999 WL 1081357, at *2 (D. Or. Dec. 1, 1999) (plaintiffs need only some factual nexus that they and the putative class were victims of a common policy or plan that violated the FLSA).[4]

---

[4] Courts routinely grant conditional certification, where the plaintiff alleges the defendant-employer paid straight time for overtime. *See Wellman v. Grand Isle Shipyard, Inc*., 2014 WL 5810529, at *4 (E.D. La. Nov. 7, 2014) ("The alleged 'straight time for overtime' policy constitutes a 'factual nexus which binds the named plaintiffs and the potential class members together.'"); *Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006); *Bowser v. Duke Energy, et al*, No. 2:16-cv-00482, DKT No. 60 (W.D. Pa. Mar. 30, 2018) (conditionally certifying class of hourly employees paid straight time for overtime with one plaintiff); *Morrison v. Omega Project Solutions, Inc*., No. 4:20-cv-00344, minute entry (S.D. Tex., Jul, 17, 2020); *Cantrell v. Lutech Resources Inc.*, No. 4:17-cv-2679, DKT No. 21 (S.D. Tex. Feb. 9, 2018) (conditionally certifying nationwide class of hourly employees paid straight time for overtime); *Ludlum v. C&I Engineering, LLC*, No. 4:18-cv-05192, Doc. 32 (E.D. Wash. May 16, 2019) (conditionally certifying a nationwide class of straight time for overtime workers regardless of job title or job duties); *Klapatch v. BHI Energy I Power Servs., Inc.*, 2019 WL 859044, at *1 (D. Mass. Feb. 22, 2019) (conditionally certifying a nationwide class of straight time for overtime workers regardless of job title or job duties and rejecting the employer's argument that the court need to engage in an individual analysis of the employees' respective job duties as premature at the notice stage); *Terry v. Chicago Bridge & Iron Co.*, No. 4:17-cv-00367, DKT No. 108 (S.D. Tex. March 8, 2018)( conditionally certifying nationwide class of straight time for overtime workers regardless of job title or job duties); *Salinas v. Wood Group PSN Commissioning Servs., Inc.*, Civ. A. No. 2:17-cv-177, Doc. 34, at *11 (S.D. Tex. Dec. 26, 2017) (conditionally certifying class of nationwide oilfield personnel paid straight time for overtime); *Hernandez v. Robert Dering Constr., LLC*, 191 F.Supp.3d 675, 684 (S.D. Tex. 2016) (conditionally certifying class of construction workers straight time for overtime); *Heeg v. Adams Harris, Inc.*, 907 F. Supp.2d 856, 863 (S.D. Tex. 2012) (conditionally certifying class of workers paid "straight time for overtime"); *Vargas v. Richardson Trident Co.*, No. CIV.A. H-09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010) (same); *Carter v. Indianapolis Power & Light Co.*, 2003 WL 23142183 at *2 (S.D. Ind. 2003) (certifying a class holding various positions such as supervisors, foremen, and management trainers and were paid overtime at a straight time rate); *Gonzalez v. CNL Wins VII, Inc.* 2015 WL 10818674, at *7 (W.D. Tex. Mar. 24, 2015) (certifying a class of cooks paid straight time for overtime); *Gomez v. Loomis Armored US, LLC*, 2017 WL 2999422, at *5-6 (W.D. Tex. April 3, 2017)(certifying class of armored guards paid straight-time for overtime).

9

As indicated above and in the attached Declarations, Plaintiff easily exceeds his burden to facilitate notice.  Here, Defendant employed over a hundred similarly situated hourly-paid "laborers" in the defined class at throughout Florida. *See* Exhibits B and C.  To that end, Defendant employs and/or employed over a hundred hourly paid "laborers" in the defined class, all of whom were/are subjected to Defendant's unlawful compensation practice of failing to pay time and one half overtime compensation for overtime hours worked. *See id*.  During different times over the last three (3) years, each of these individuals worked as an hourly paid "laborer." *See id*.  Moreover, these hourly paid "laborers" regularly worked more than forty (40) hours per work week.

Indeed, in the instant case, Plaintiff has presented equivalent evidence to what this Court and others have repeatedly deemed sufficient for conditional certification of an FLSA collective action. *See, e.g., Webb v. RMS Properties, Inc., et al.,* 0:18-cv-60177-WPD, D.E. 59, pp. 5-6 (S.D. Fla. Feb. 20, 2019) (DIMITROULEAS, J.) (granting conditional certification based on testimony of named-plaintiff and that of a single opt-in, as well as a second opt-in's consent to join); *Shaw v. Set Enterprises, Inc.,* 2016 WL 10593592 at *2 (S.D. Fla. Dec. 6, 2016) (DIMITROULEAS, J.) (granting conditional certification where three named plaintiffs had not identified any other opt-ins, had not submitted affidavits indicating that others wished to join, and the case had been pending for more than one year when the motion for conditional certification was decided.); *see also Mancuso v. Florida Metropolitan University, Inc*., 2010 WL 2572412 (S.D. Fla. June 24, 2010)(4 consents combined with affidavits of the named plaintiff and 3 opt-ins sufficient); *Wynder v. Applied Card Systems, Inc*., 2009 WL 3255585 (S.D. Fla. Oct. 7, 2009)(conditional certification of an FLSA collective action granted based upon two affidavits – that of the single named plaintiff and one opt-in plaintiff); *Ackley v. City of Fort*

*Lauderdale*, 2008 WL 214721, at *2 (S.D. Fla. Jan. 24, 2008) (3 consents combined with the affidavits of the named Plaintiff and 2 of the opt-in Plaintiffs sufficient); *Wajcman v. Hartman & Tyner, Inc.*, 2008 WL 203579 (S.D. Fla. Jan. 23, 2008) (allegations in Complaint and affidavits of 3 opt-ins sufficient); *Reese v. Kimberly Credit Counseling, Inc.,* 06-80505-CIV-PAINE/JOHNSON, DE 71 (S.D. Fla. Dec. 24, 2006)(affidavit of one named plaintiff and three opt-in plaintiffs, coupled with one prior lawsuit against the same Defendant for the same overtime violations, sufficient for conditional certification of an FLSA collective action); *Guerra v. Big Johnson Concrete Pumping, Inc.,* 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006)(same); *Reyes v. Carnival Corp.,* 2005 WL 4891058 (S.D. Fla. May 25, 2005) (named plaintiff's affidavit, in combination with the two opt-in plaintiffs' notices of consent to join and affidavits sufficient to grant conditional certification of an FLSA collective action). Based upon the Complaint allegations and the above-referenced Affidavits, along with the participation of the Opt-In Plaintiffs to date (pre-notice), Plaintiff satisfies the applicable burden of persuasion that a colorable basis exists for determining that others similarly situated to Plaintiff exist, and conditional certification and notice are warranted.

Based upon the Complaint allegations and the above-referenced Declarations, the Consents of three (3) other "laborers" filed to date, and the prior lawsuit and DOL investigation both of which mirrored the allegations at bar, Plaintiff satisfies the applicable burden of persuasion that a colorable basis exists for determining that others similarly situated to Plaintiff exist.

    **C.**    **<u>Additional Similarly Situated Individuals Will Join the Lawsuit Once Provided Notice</u>**

Plaintiff has demonstrated that the other similarly situated hourly paid "laborers" would join in the case if provided notice. The United States Supreme Court has emphasized that the

FLSA should be liberally applied to the furthest reaches consistent with congressional direction. *Mitchell v. Lubin, McGaughy & Associates*, 358 U.S. 207, 211 (1959). With this in mind, it is reasonable to assume that where, as here, there are similarly situated employees with the same job titles of hourly paid "drivers" and who all allegedly experienced the same FLSA violations (Defendant's failure to pay time and one half overtime), that potential class members would opt-in to the lawsuit if given notice of it. *See Reab v. Electronic Arts, Inc.,* 2002 WL 320769510 at * 6 (D. Col. 2002). Similarly, district courts have agreed to "accept, for purposes of deciding the instant motion for conditional collective action certification, that there are persons . . . who have suffered wage and hour violations who would join this suit if they had notice of the suit." *Barron*, 242 F. Supp. 2d at 1101.

As of the filing of this Motion, three (3) additional similarly situated representatives learned of this action prior to any Court notice being issued, and opted-in to this case. This alone demonstrates that others desire to join, if given notice of this matter. *See Webb, supra; Shaw, supra; Brasaus, supra; Tyler v. Payless Shoe Source, Inc.*, 2005 WL 3133763, at *3 (M.D. Ala. Nov. 23, 2005) (three to five consents to join were sufficient to establish that others desired to opt in). Based upon the Declaration from the named Plaintiff, the Declarations of the Opt-in Plaintiffs, as well as the consent forms filed with this Court and other evidence of record, Plaintiff establishes the specific facts demonstrating other employees are interested in opting in. *See Grayson v. K-Mart Corp.,* 79 F. 3d 1086, 1097 (11th Cir. 1996). In addition, allowing class notification to a potential class this large will certainly avoid multiple lawsuits where numerous employees have allegedly been harmed by the same violation. *See Prickett v. Dekalb County,* 349 F.3d 1294, 1297 (11th Cir. 2003).

Thus, a collective action is sought as the Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate the same relief with respect to the class as a whole. Additionally, questions of law or fact common to all class members who worked for Defendant predominate over any questions affecting only individual members. Hence, a collective action is superior to other available methods for the fair and efficient adjudication of this controversy. Accordingly, Plaintiff seeks Court authorization to provide: (1) the proposed "Notice," attached as EXHIBIT A, to be sent to all similarly situated employees; and (2) the proposed "Consent to Join" form, attached as EXHIBIT B, which similarly situated employees can complete, sign, and file with the Court.

### III. **PLAINTIFF'S NOTICE IS ACCURATE AND SHOULD BE TEXTED AND E-MAILED AS WELL AS MAILED.**

Plaintiff's proposed judicial notice is "timely, accurate, and informative." *See Hoffmann-La Roche,* 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted. To that end, Plaintiff requests they be permitted to e-mail the Class Notice, Exhibit __, to all workers within the defined class, in addition to mailing same via first-class mail. E-mail notice serves to further the broad remedial purpose of the FLSA and has been widely adopted by federal courts throughout the country. *See, e.g., Kraft v. Freight Handlers, Inc.,* 2019 WL 3854989, *6 (M.D. Fla. May 21, 2019); *Lewis v. Huntington Nat. Bank*, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011) ("The addresses on file for [former employees] may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least one copy of the Notice Package."); *Butler v. Direct SAT USA, LLC,* 876 F. Supp.2d 560, 575 (D. Md. 2012) (allowing e-mail notice to putative class members because communication through e-mail is now the "norm."); *Denney v.*

*Lester's, LLC*, 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012) ("[T]he Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail, and postings in Defendants' break rooms."); and *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)(noting that "communication through email is [now] the norm.").

Plaintiff also requests that this Court allow notice to be sent via text message. *See Landry v. Swire Oilfield Servs., L.L.C.,* 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017) ("The Court finds persuasive the [p]laintiffs' argument that communication via email and text message will 'increase the chance of the class members receiving and reading the notice. . .'"). Additionally, "given the amount of junk mail that people receive, email and text message likely are more effective methods for communicating with potential class members than traditional first-class mail." *Landry*, 252 F. Supp. 3d at 1130; *see also Irine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("[T]ext messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone serving as the most consistent and reliable method of communication"); *Regan v. City of Hanahan*, 2017 WL 1386334, at *3 (D.S.C. Apr. 18, 2017) ("text messaging is reasonable because, in today's mobile society, individuals are likely to retain their mobile numbers and email addresses even when they move"); *Vega v. Point Security, LLC*, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017) ("[I]n the world of 2017, email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus that [sic] using email and texts to notify potential class members is entirely appropriate.") Allowing notice by text message and e-mail will achieve the broad remedial purposes of the FLSA to ensure the

most number of class members receive a form of the Notice and be given a chance to join this action.

A.   **A Sixty Day Notice Period is Appropriate.**

Notice periods may vary, however, courts have routinely held that a sixty (60) to ninety (90) day notice period is appropriate in FLSA cases. *See, e.g., Fiore v. Goodyear Tire & Rubber Co.*, 2011 WL 867043, at *4 (M.D. Fla. March 10, 2011) (setting notice period at 90 days); *Ballew v. Lennar Corp.,* 2008 WL 4218137, at *1 (M.D. Fla. Sept. 11, 2008) ("The Court further finds the 90 day period to be reasonable…"); *Aguirre-Molina*, 2016 WL 4472992 at *7 (approving sixty day notice period); *Abdul-Rasheed v. KableLink Comm., LLC*, 2013 WL 5954785, *5 (M.D. Fla. Nov. 7, 2013) (approving sixty day notice period).  Here, Plaintiff requests a sixty day notice period for putative class members to return their consent to join form and opt into the case.

IV.   **NOTICE SHOULD BE GIVEN WITHIN A THREE-YEAR STATUTE OF LIMITATIONS PERIOD.**

Notice within a three-year statute of limitations period is appropriate in this case. The FLSA allows a Plaintiff to collect damages within a three-year statute of limitations if it can be shown that a Defendant's violation of the FLSA was "willful"—meaning that the "employer either knew, or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Whether Defendants' violations of the FLSA were willful is an issue going to the merits of the case, and not whether notice should be issued to potential claimants. *Abdul-Rasheed*, 2013 WL 5954785 at *5; *Harris v. Performance Transp., LLC*, 2015 WL 1257404, *4 (M.D. Fla, March 18, 2015). The facts concerning willfulness must be elicited during discovery, and Defendant may challenge the three-year statute of limitations again at an appropriate time.  Thus, notice should

go to all individuals who were employed by Defendant during the three-year period preceding the Court's ruling on the instant Motion.

V.  **CLASS MEMBERS SHOULD BE ALLOWED TO ELECTRONICALLY EXECUTE THEIR CONSENT FORMS.**

Federal Courts throughout the United States "recogniz[e] that 'we live in a time when all manner of commercial transactions are routinely cemented by electronic submission'" and "courts have approved the use of online, electronic signature opt-in forms." *Landry*, 252 F. Supp. 3d at 1130 (quoting *Mraz v. Aetna Life Ins. Co.*, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014); *Kraft,* 2019 WL 3854989 at *6 (allowing electronic signatures on consent forms and noting that "Florida law recognizes the validity of electronic signatures. Fla. Stat. § 668.004.")[5]; *White v. Integrated Elec. Techs., Inc.,* 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) (granting Plaintiffs' request to allow class members to execute electronic consent forms); *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *8 (N.D. Tex. Nov. 29, 2012), report and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) (allowing class members to be given the option to execute their consent forms online via electronic signature service). At the federal level, the Electronic Signatures in Global and National Commerce Act, effective since 2000, "facilitate[s] the use of electronic records and signatures in interstate or foreign commerce." 15 U.S.C. § 7001, *et seq*. Therefore, class members should have the option to sign their consent to join forms electronically, especially given the COVID-19 pandemic. Giving class members this option is in line with the FLSA's remedial purposes and would ensure that class members have the ability to submit their consent forms without additional obstacles standing in their way.

---

[5] Furthermore, during the COVID-19 pandemic, the Florida Supreme Court has issued numerous orders promoting remote and electronic participation in the litigation process. *See, e.g.,* Florida Supreme Court Administrative Order No. AOSC20-23, Amendment 5, available at https://www.floridasupremecourt.org/content/download/639134/file/AOSC20-23-Amendment-5.pdf.

### VI. LIMITED DISCOVERY OF NAMES AND CONTACT INFORMATION OF THE PUTATIVE CLASS IS NECESSARY TO CARRY OUT NOTICE.

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. *Morden v. T-Mobile USA, Inc.,* 2006 WL 1727987, at *3 (W.D. Wash. June 22, 2006) (compelling the defendant to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional class certification motion was pending before the court). "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt in to the action." *Id.* As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. *See, e.g., Hoffmann-La Roche,* 493 U.S. at 165; *see also Reese,* 2018 WL 1863833, at *6; *Randle v. Allconnect, Inc.*, 2014 WL 1795184 (N.D. Ga. May 6, 2014) ("Plaintiff moves to require Defendant to produce information about potential class members, including their full names, last-known addresses, email addresses, dates of employment and dates of birth. This information is within Defendant's possession, its production to Plaintiff will facilitate issuance of the notice, and it is required to be produced by Defendant."); *Anglada v. Linens 'N Things, Inc.,* 2007 WL 1552511, at *7 (S.D.N.Y. May 29, 2007); *Henry v. Quicken Loans, Inc.,* 2006 WL 2811291, at *7 (E.D. Mich. Sept. 28, 2006); *Gieseke v. First Horizon Home Loan Corp.,* 408 F. Supp. 2d 1164, 1169 (D. Kan. Jan. 10, 2006); *Dietrich v. Liberty Square,* 230 F.R.D. 574, 581 (N.D. Iowa 2005). Thus, if this Court grants Plaintiff's Motion, the Court should likewise order Defendants to provide Plaintiff with a list of all putative class members' names, addresses, phone numbers, and e-mail addresses to carry out notice.

### CONCLUSION

In light of the broad remedial provisions of the FLSA, *see, e.g., Prickett v. DeKalb County,* 349 F.3d 1294, 1296-97 (11th Cir. 2003) (citations omitted), coupled with the lenient

standard for conditional certification, Plaintiff's allegations in his Complaint, the Declarations of Plaintiff and Opt-in Plaintiffs, along with all of the additional evidence of record are more than sufficient to satisfy Plaintiff's relatively light burden of showing this Court that "there are [similarly situated] persons . . who have suffered wage and hour violations who would join this suit if they had notice of the suit." *See Barron, supra.*

WHEREFORE, Plaintiff respectfully requests that this Court conditionally certify this case as a collective action, and permit and supervise notice to all current and former hourly paid "laborers" in the defined class who did not receive full and proper payment of time-and-a-half wages for all overtime hours worked for Defendant.

### CERTIFICATE OF GOOD FAITH PURSUANT TO L.R. 7.1

Plaintiff's counsel conferred with Defendant's counsel pursuant to the local rules in a good faith effort to resolve this Motion prior to its filing, and is authorized to represent that Defendant does not oppose the relief sought by this Motion.

Dated: May 13, 2021

Respectfully submitted,

**/s/ ANDREW R. FRISCH**
Andrew R. Frisch
Florida Bar No.: 27777
E-mail: AFrisch@forthepeople.com
MORGAN & MORGAN, P.A.
8581 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-2013

***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on May 13, 2021, which I understand will send notice to all counsel of record on this date.

/**s/ ANDREW FRISCH**
Andrew Frisch, Esquire