**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**
**Case No. 0:20-cv-61249-WPD**

|  |  |
|---|---|
| JHON SARMIENTO, Individually and on behalf of all others similarly situated, | ) |
|  | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| SCHEAR CONSTRUCTION, LLC, a Florida Limited Liability Company, | ) |
|  | ) |
|  | ) |
| Defendant. | ) |

## PLAINTIFF'S CONSENT MOTION FOR SETTLEMENT APPROVAL WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff, JHON SARMIENTO ("Plaintiff"), on behalf of himself and those similarly situated, by and through his undersigned counsel, moves for Court approval of the mutually agreed-upon terms of settlement in this action, in which Plaintiff, and those similarly situated individuals, (hereinafter "Plaintiffs") seek allegedly unpaid overtime compensation.  In further support hereof, Plaintiff states as follows:

1.     Plaintiff commenced this case on or about June 25, 2020.  Plaintiff worked for Defendant as a laborer, and alleged he had been denied overtime pay under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et. seq.* (the "FLSA"), because Defendant paid him "straight time" for all hours worked.  D.E. 1.

2.     Plaintiff, filed this case as a collective action under 29 U.S.C. § 216(b) as well as a putative class action under the Virgin Islands Fair Labor Standards Act ("VIFLSA"), 24 V.C.I. § 1, *et seq.  See id.* Plaintiff's Class/Collective Action Complaint sought unpaid overtime compensation and liquidated damages, plus attorneys' fees and costs, on behalf of all hourly-paid construction

laborers who worked for Defendants within the last three (3) years who were not compensated at time-and-one-half for all hours worked in excess of 40 hours in one or more workweeks, and were not paid in compliance with the VIFLSA (i.e. not paid seventh day premium pay, etc.).

3.      Specifically, Plaintiff alleges that he and the other similarly situated individuals were not paid overtime compensation due to them under the FLSA and VIFLSA, as a result of the Defendant's pay and timekeeping practices that they assert violated the FLSA and VIFLSA. Plaintiff contends that Defendant only paid them "straight time" for their overtime hours worked and failed to pay premium pay as required for overtime hours and other circumstances, as required by law.

4.      Defendant denies each of Plaintiff's allegations above and asserts that Plaintiff and those similarly situated were paid in compliance with the FLSA and VIFLSA.  *See* Defendant's Answer, D.E. 13, generally.

5.      By Order dated May 21, 2021, this Court granted Plaintiff's Unopposed Motion to Conditionally Certify the case as a collective action and permitting notice to issue.  D.E. 30.

6.      Thereafter, on November 15, 2021, Defendant filed its Motion to Deny Class Certification. D.E. 67.

7.      Subsequently, opt-in Plaintiff, Michael Book filed a stand-alone putative class action under the VIFLSA, after the Court permitted him to withdraw his consent.  *See Book v. Schear Construction, LLC,* Case No. 3:2021cv00080, D.E. 1 (D.V.I. Nov. 18, 2021); D.E. 53.  That case is currently stayed pending approval of the instant settlement.

8.      The Parties then attended two (2) separate full-day mediations before experienced wage and hour class/collective action mediator Neil Flaxman of Neil Flaxman, P.A., one on November 19, 2021, and then a second one on April 13, 2022.

9.     At the conclusion of the November 19, 2021 mediation, Defendant agreed to provide all time and pay records for all hourly-paid laborers during the relevant time period in the Virgin Islands, and further agreed to reimburse Plaintiff's counsel the cost of retaining a forensic accountant to review the records and create a damages model from the data.[1]

10.    At the conclusion of the second mediation the Parties reached an agreement in principle to resolve all claims asserted in both this case and the book case, on a common fund basis, for $739,825.97, with Defendant paying the cost of settlement administration and employer-side taxes in addition. *See* Settlement Agreement attached as **EXHIBIT 1**.

11.    Prior to resolution, Defendant provided large amounts of data to Plaintiff's Counsel, including all data regarding pay and time records, schedules, and other documents pertaining to all construction laborers who had worked for Defendant in the Virgin Islands at any time in the preceding three (3) years.

12.    With the assistance of an expert accountant, Marty Williams of Forensic Account Advisors, Plaintiff's undersigned counsel conducted extensive review and analysis of the time and pay data for all of the Plaintiffs, which he then presented to Defendant.

13.    Defendant accepted Plaintiff's expert report and the Parties then agreed to attend the second mediation with Neil Flaxman, at which time the Parties were successfully able to reach a negotiated resolution of the instant claims.

14.    After a full review of the information exchanged in this matter, the Parties, who have been represented by counsel at all times, agree that the negotiated terms of settlement represent a fair, reasonable, and just compromise of disputed issues.

---

[1] The reimbursement payment has been completed.

15.     Pursuant to the Settlement Agreement, the Gross Common Fund of $739,825.97, and includes all attorneys' fees and payments to members of the collective.

16.     Plaintiff calculated the maximum exposure with respect the class's potential actual damages arising from the alleged violations in a three-year statute of limitations period to be approximately $400,000. In addition, Plaintiff also sought liquidated damages, which if awarded, would have resulted in an equal amount being paid in addition to the actual damages.

17.     Although Defendant maintains that its failure to pay overtime was, at all times, in "good faith," as part of the mediation agreement reached at the first mediation, Defendant agreed to pay 85% liquidated damages, on top of the overtime damages stipulated to as part of the eventual settlement.

18.     Defendant does not agree that their maximum exposure for overtime damages is $400,000.00 and instead argues that many of the Plaintiff's claims were inflated based on the inclusion of non-compensable travel time, which Defendant voluntarily paid to members of the class.

19.     Defendant further denies that any violation occurred with respect to unpaid overtime.

20.     Plaintiff also had concerns about whether Defendant would be able to satisfy a judgment following the protracted and costly litigation that would have followed had the parties not been able to resolve the matter.  Moreover, Plaintiff and opt-ins were concerned that Defendant would appeal any ruling in their favor even if they won the case, such that it could take years to recover any monies even if they won the case and subsequent appeals.

21.     Thus, bona fide factual issues exist between the Parties regarding whether Defendant violated the FLSA and/or VIFLSA, and if so what measure of damages is appropriate.

22.     However, as described above, both sides have considerable risk in proceeding forward, both with respect to liability, damages and collectability.  As such, a more immediate and amicable resolution is in everyone's best interest.

23.     The Parties agree that this is a fair settlement that provides significant compensation to Plaintiff and opt-ins notwithstanding the legal and factual arguments raised by Defendant.

24.     To date, all Plaintiffs and putative opt-in Plaintiffs who have learned of the terms of the settlement have overwhelmingly voiced their approval of the terms of same.

25.     Defendant has agreed to compromise on its defenses in order to resolve these claims globally.  Plaintiffs and Defendant compromised on the claim for liquidated damages, as well as the underlying claim, to reach the settlement described above and believe these compromises are in their best interests.  Further, the Parties have agreed to credit, in part, Defendant's claim that some of the overtime hours claimed constitute non-compensable travel time.

26.     Pursuant to the Settlement Agreement, each class member opting in to the settlement class will receive his share of the class settlement funds based on a percentage of his total claimed damages.   Specifically, each collective member will receive a share of the settlement that is equal to roughly 185% of his total claimed overtime damages over a **three-year** statute of limitations period, before attorneys' fees/costs (close to 125% of their claimed overtime damages net of attorneys' fees).

27.     The individual class member damages were determined by reference to Defendant's pay and time records for each Plaintiff.

28.     The Notice which is to be sent explaining to each opt-in that in accepting the settlement the individual is agreeing to participate in the settlement and waive his rights.  As the parties explain in more detail below, there are no due process concerns because, under the opt-in FLSA settlement process, only those individuals who have already opted in, and affirmatively agree to accept payment in connection with the matter would be bound by the settlement.  If a class member chooses not to participate in the settlement, then that individual loses no rights and is free to pursue his individual claim, if desired, as he sees fit.

29.     Unlike a class action, where there are absent class members and a class member may lose rights unless they opt-out, in a collective action such as this case, individuals forfeit no rights unless they choose to participate in the resolution of the claim.

30.     Each opt-in will be advised in the Notice of the way in which his settlement amount will be calculated, if he chooses to participate and of the terms of his release.  The release is limited to FLSA and related VIFLSA wage claims, only for those who participate in the settlement.  Each opt-in can then decide whether to voluntarily join the settlement.  Opt-ins only release claims if they decide to voluntarily join the settlement.  Any portion of the gross settlement amount not claimed by the opt-ins will be returned by the Administrator to Defendant.

31.     The class settlement funds, described in the Settlement Agreement as the Net Settlement Fund, will be comprised of the gross settlement fund less court-awarded attorney's fees and costs of claims administration.  Pursuant to the Settlement Agreement, Defendants will transmit the settlement fund amount to the claims administrator for distribution as set forth in the Settlement Agreement.

32.     Plaintiffs seek a total of 33.3% of the common fund for their attorneys' fees, and reimbursement of their costs, for work performed on behalf of the class in order to achieve the

result obtained.  Even after Plaintiffs' attorneys' fees are paid, the amount remaining in the fund to pay Plaintiffs' claims is substantially more than the amount calculated as the full value of class claims for wages based on a three-year statute of limitations.

33.     Defendant has agreed to separately pay the costs of administration, which will include costs for mailing settlement checks, and other claims administration duties.

34.     Plaintiffs' counsel will not receive any additional fees for time expended answering any questions class members may have and explaining the settlement to them.

35.     The Settlement Agreement also provides for a mutual general release of claims only as to the Named-Plaintiff and Defendant.  This mutual general release was negotiated separately, and was important to both Parties. The Parties wish to have full and final peace between them as to the resolution of any and all of these potential claims.  Neither Party admits any liability with respect to any of the claims released in the mutual general release. Significantly, the general release only applies between the Named Plaintiff and Defendant, and the collective members' resolution of claims is limited to the wage claims set forth specifically in the Release attached to the Notice (**Exhibit A to the Settlement Agreement attached hereto as Exhibit 1**).

36.     As set forth below, this requested percentage is well within the range of attorney's fees previously approved as reasonable within the Eleventh Circuit and beyond in similar common fund settlements, including those previously approved by this Court. *See, e.g., Webb v. RMS Properties, Inc.*, No. 0:18-CV-60177-WPD, D.E. 117 (S.D. Fla. Aug. 20, 2019).

37.      Defendant has no objection to Class Counsel's requested award for attorney's fees and costs.

**MEMORANDUM OF LAW**

There are two (2) ways that FLSA overtime claims may be settled, compromised, or released by an employee. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The first, which has no application in the instant case, permits resolution of claims under the supervision of the United States Department of Labor. *Id.* The second, which does apply in the instant case, permits judicial approval of disputed claims on terms that are fair and reasonable:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354; *see also Brooks v. Continental Property Services, Inc.*, 2008 WL 781825 (M.D. Fla. 2008) (approving FLSA settlement in accordance with *Lynn's Food Stores*); *Swailes v. Surety Construction Co.*, 2008 WL 875981 (M.D. Fla. 2008) (same).

When asked to review and approve the terms of a settlement under the FLSA, there is a "strong presumption" in favor of approval. *Dial v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005); *Hamilton v. Frito-Lay, Inc.*, No. 605-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), report and recommendation adopted, No. 6:05CV-592ORL-22JGG, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). This is particularly true when, as here, the parties are represented by experienced counsel. Indeed, absent fraud and collusion, the court may not only rely on the judgment of experienced counsel, but "should be hesitant to

substitute its own judgment for that of counsel." *Diaz v. Hillsborough Cty. Hosp. Auth.*, No. 8:90-CV-120-T-25B, 2000 WL 1682918, at *4 (M.D. Fla. Aug. 7, 2000) (quoting *Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977)).  The settlement in this case was finalized after the parties engaged in protracted negotiations and mediated multiple times before an experienced employment mediator certified in this Court.  As the parties explain in more detail below, this Settlement Agreement is fair and reasonable, and should be approved.

A.      **The Agreement Is Fair and Reasonable**.

The Court should approve the Settlement Agreement because it is fair and reasonable. The settlement was negotiated at arm's-length by experienced counsel; the amount to be paid to the collective is fair and adequate; there is a significant risk to the Plaintiff Class of an adverse judgment on the merits or whether the case should proceed as a collective action; the collective will receive adequate notice sufficient for each opt-in to assess his or her rights; and the amount of fees, and cost are in line with sums previously awarded in similar cases.

This settlement is particularly fair and reasonable because, unlike a class action settlement, only those individuals who voluntarily choose to become part of the lawsuit, and thus to participate in the settlement, are bound by it.  As the Parties explain more fully below, any potential class member who thinks the settlement is unfair is not obligated to participate in the settlement and is not bound by it.

B.      **The Settlement Is The Product of Arm's Length Negotiations and Resolves A *Bona Fide* Dispute.**

The settlement in this case was reached after counsel for the Parties had engaged in a mediation before a mediator recognized for his expertise in employment settlements.  The Parties also engaged in subsequent negotiations.  It is the opinion of counsel for both Parties that the settlement is fair, adequate, and reasonable.  As courts have repeatedly held, the Court should

defer to the judgment of counsel unless there is evidence of collusion.  *See Weldon v. Backwoods Steakhouse, Inc.*, No. 6:14-CV-79-ORL-37TBS, 2014 WL 4385593, at *3 (M.D. Fla. Sept. 4, 2014) ("Short of a trial, the Court is not in as good a position as the parties to determine the reasonableness of the settlement.").  There is no evidence of collusion here.

**C.**     **The Amount To The Class Is Fair**.

Not only is the settlement the product of an adversarial, non-collusive process, but the amount to be paid to the Plaintiff Class is fair and reasonable.  Each participating class member is receiving at least 125% of the amount claimed. Because these Plaintiffs were all paid their regular hourly rates for all of their hours worked, they claim damages (which Defendant disputes) of half of their regular rates of pay for each overtime hour. Because the amounts were calculated using actual rates and actual hours worked, each collective member's share of the settlement is proportional to his actual total claimed overtime hours in the litigation.

As explained in the Settlement Agreement, the amount going to each class member was determined by Plaintiffs' counsel by applying a formula that took into consideration the actual damages that each opt-in would have received if he prevailed in his claim.

These distribution methods are described in the Settlement Agreement and in the Notice that would be sent to each current opt-in.  Only those who voluntarily agree to join the settlement would be bound by it.  As stated in the Notice, any collective member who has questions about the settlement may contact Plaintiffs' counsel.  More importantly, any opt-in who disagrees with the allocation or with any of the terms of the Settlement Agreement does not have to join the settlement, in which case he would not give up any rights, including not releasing any claims.

**D**.     __The Probability of Success And Decertification__.

In considering settlements, courts should weigh the probability of success, the likelihood of delay in obtaining recoveries, and the risk inherent in any litigation.  *See*, *e.g.*, *Gevaerts v. TD Bank*, No. 1:14-CV-20744-RLR, 2015 WL 6751061, at *7 (S.D. Fla. Nov. 5, 2015).   These factors weigh strongly in favor of approval here.

The claim raised by the Plaintiff, has a high likelihood of success, but is not without its challenges.  Defendant would likely have made much of certain plaintiffs' inability to produce tax records, and the expense write-offs found in the tax returns of individuals who produced returns and would have tried to prove that Plaintiff's hours claimed were inflated because they included a significant amount of non-compensable commuting time.

Finally, the strong likelihood that any recovery would take years also weighs in favor of approval.  Indeed, public policy favors settlement, especially in complex cases such as this, where substantial resources can be conserved by avoiding time, cost, and protracted litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("…we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation").  Plaintiffs' claims are not likely to be decided until after extensive discovery and perhaps a trial.  Even if they prevail, there would likely be an appeal.  Absent settlement, the Plaintiff Class is not likely to see any recovery for years.  That fact alone weighs strongly in favor of approval.

**E.**     __Due Process Considerations__.

Because there are no absent class members in an FLSA collective action, a settlement under the FLSA does not require the exacting due process considerations necessary under a class action settlement.  There is, for example, no need for an objection period or a fairness hearing; instead, approval may be sought on a single motion to enter a stipulated order.  *See id.* at 1353.

As courts have repeatedly observed, the main reason for this is that only individuals who affirmatively opt-in are bound by the settlement.  Unlike class actions, where class members are bound unless they opt-out, potential members of an FLSA collective action can be bound by a settlement—or participate in any judgment—only if they opt-in.  *Calderone*, 838 F.3d at 1102. In this case, the opt-ins will only be bound if they agree to participate in the settlement.  The Notice will advise them of the settlement, and will advise them how to obtain and read the actual Settlement Agreement.  Only if they then independently decide to participate in the settlement will they be bound by the settlement, including receiving the settlement payment and being bound by the release.  Any individual who chooses not to participate is not bound in any way by the settlement or any release.  That significant difference between a class action settlement and an FLSA settlement weighs in favor of approval, since the individual class members will have the opportunity to make an informed decision about whether to join the settlement, and will not be bound by it unless they affirmatively choose to do.

**F.  The Mutual Release Provision Between Named Plaintiff and Defendant Is Important to Both Parties, Is not the Product of Employer Overreaching, and Does Not Affect the Fairness of the Resolution.**

While Plaintiff expressly denies any wrongdoing or liability, he was interested in the possibility that resolution of this matter might also include a global resolution as to all potential claims between the Parties, such that each Party could be assured of peace going forward.  As such, when the possibility of mutual general release was raised in settlement discussions, each release as consideration for the other, this was an attractive proposition to Plaintiff and Defendant alike.  Unlike some resolutions, in which a defendant conditions resolution on a receipt of a general release from a plaintiff, for which no consideration is given and no particular benefit accrues to the plaintiff, here the mutual general release was decided upon separately from

the resolution of the FLSA matters, and was a provision specifically agreed to and desired by both Parties.

While there is understandable hesitation to approve general releases in FLSA claims where it is an after-thought and/or a product of employer overreaching, courts, including in this district, approve general releases where they are mutual and valuable to each party. *See e.g., Davidson v. Golden Bay Towers, Inc.*, No. 18-CV-62061, 2018 WL 7636333, at *1 (S.D. Fla. Dec. 17, 2018) (approving FLSA settlement with mutual general release); *Bautista v. Fantasia Enterprises, Inc.*, No. 13-61218-CIV-BRANNON, 2014 WL 12577601, at *1 (S.D. Fla. Apr. 29, 2014) (same); *Stamey v. JKW Maint. Corp.*, No. 12-61557-CIV, 2013 WL 12383486, at *2 (S.D. Fla. Apr. 15, 2013), *report and recommendation adopted,* No. 12-61557-CV, 2013 WL 12383487 (S.D. Fla. May 24, 2013)(same); *Vergara v. Delicias Bakery & Rest., Inc.,* No. 6:12–cv–150–Orl–36KRS, 2012 WL 2191299, at *2–3 (M.D. Fla. May 31, 2012), report and recommendation adopted, 2012 WL 2191492 (M.D. Fla. Jun.14, 2012) (same).

## G.   **Attorneys' Fees and Costs are Reasonable.**

The Supreme Court and the Eleventh Circuit have all noted that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (citing *Boeing*, 444 U.S. 472).

"In the Eleventh Circuit, class counsel is awarded a percentage of the fund generated through a class action settlement." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011).  In *Camden,* the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth in the Eleventh Circuit attorneys' fees awarded from a common fund shall be

based upon a reasonable percentage of the fund established for the benefit of the class." *Camden,* 946 F.2d at 774.

"The lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362.  Rather, the lodestar "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.,* 962 F. Supp. 1254, 1256 (C.D. Cal. 1997).[2]  Precisely for this reason, in *Camden,* the Eleventh Circuit criticized lodestar and the inefficiencies that it creates. 946 F.2d at 773–75.  In so doing, the court "mandate[d] the *exclusive* use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice." *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) (emphasis added); *see also* Alba Conte, *Attorney Fee Awards* § 2.7, at 91 fn. 41 ("The Eleventh ... Circuit[ ] repudiated the use of the lodestar method in common-fund cases").  Under *Camden*, courts in

---

[2]  Additionally, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam,* 176 F. Supp. 2d at 1335 (quoting *Behrens,* 118 F.R.D. at 548); *see also In re Continental Ill. Sec. Litig.,* 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler,* 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta,* 652 F.Supp. 755, 759 (N.D. Ga. 1985), *modified,* 803 F.2d 1135 (11th Cir.).  As Judge King from the Southern District of Florida has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer.... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens,* 118 F.R.D. at 548.

this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all. *See, e.g., David,* 2010 WL 1628362.[3]  "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded.... In this context, monetary results achieved predominate over all other criteria." *Camden,* 946 F.2d at 774 (citations and alterations omitted).  *See, also*, *In re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002) ("[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund.").

Numerous recent decisions in similar wage and hour class/collective actions have awarded attorneys' fees up to, and often in excess of, the 33.3% requested by class counsel here. *See, e.g.*, *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee… which is one-third of the settlement fund, is awarded from the settlement fund to the plaintiff's Lead Counsel. This amount is fair and reasonable in light of… fee awards in comparable cases.); *Vogenberger v. ATC Fitness Cape Coral, LLC,* 2015 WL 1883537, at*3 (M.D. Fla. April 24, 2015) (awarding a fee award of 33% of the FLSA common fund); *Graves v. Estes Heating & Air Conditioning, Inc.,* Case No. 3:14-cv-0084-TCB, Dkt. 47 (N.D. Ga. 2015) (awarding fee of 33.33% of the common fund in FLSA case); *Jackson v. Healthport Technologies, LLC,* Case No. 1:11-cv-01687-SCJ, Dkt. 68 (N.D. Ga. 2013) (approving fees and costs to Class Counsel in the amount of 33 1/3% of the common fund in FLSA case); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. 2012) (class settlement approved with 33 1/3 of the common fund payable as

---

[3] *See also Stahl v. MasTec, Inc.,* 2008 WL 2267469 (M.D. Fla. 2008); *Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.,* 2002 WL 34343944 (S.D. Fla. 2002); *Fabricant v. Sears Roebuck & Co.,* 2002 WL 34477904 (S.D. Fla. 2002).

attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla. 2011) (approving class settlement with one-third of maximum common fund apportioned as attorney's fees); *Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Kreher v. City of Atlanta, Georgia,* 2008 WL 11399561, at *5 (N.D. Ga. Sept. 30, 2008) (32.13% of settlement held to be fair and reasonable in accordance with the FLSA); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00-cv-00435-RH-WCS, Dkts. 14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund to plaintiffs' counsel); *Stahl v. Mastec, Inc.,* 2008 WL 2267469 at *2 (M.D. Fla. 2008) (approving attorney fees of $3,744,500.00 out of a common fund of $13,137,365.00); *Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453-MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs).[4]   As such, this Court should approve the attorneys' fees requested here.

---

[4] Additionally, many other courts also approve similar fee requests in common fund cases. *See Barber, et al v. Premier Delivery Services, Inc. et al.,* Case No. 2:13-cv-00001-ALM-MRA, Dkt. 51 (S.D. Oh. 2014) (finding a fee of approximately 31% of the common fund to be "reasonable and appropriate..."); *(Willix v. Healthfirst, Inc.,* 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation…' "); *Prasker v. Asia Five Eight LLC, et. al,* 2010 WL 476009, *6 (S.D.N.Y. 2010) (stating that "[i]n wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award" and awarding an attorney fee payment of 33% of the common fund); *Duchesne v. Michael Cetta, Inc., et. al.,* 2009 WL 5841175, *3 (S.D.N.Y. 2009) (approving attorney fees of $1,015,000 out of a common fund of $3,150,000, or 32.2%, and stating that the "percentage of recovery" method is consistent with the trend in the Second Circuit); *Faltaous v. Johnson and Johnson, et. al.,* 2007 WL 3256833, *10 (D.N.J. 2007) (stating that "attorneys' fees of approximately 30 percent of the common fund are also regularly awarded in labor and employment law class actions.") (internal citations omitted); and *Mohney v. Shelly's*

Defendant does not oppose Plaintiffs' request for an award of 33.3% of the common fund to their counsel for attorneys' fees, and reimbursement of costs incurred in this action.

**WHEREFORE**, Plaintiff and Defendant respectfully move for entry of an Order, ordering the following:

(1) That the proposed settlement is a fair and reasonable compromise of the claims asserted;

(2) That the Parties perform the Notice process and all other duties described in the Settlement Agreement executed between the Parties;

(3) That Class Counsel be awarded attorney's fees and costs consistent with the Agreement;

(4) That this Court retains jurisdiction to enforce the terms of the settlement agreement;

(5) That upon notice that the Settlement Funds have been paid to the claims administrator, the Court will dismiss the matter with prejudice and close the case; and

(6) Any other relief that this Court deems just and appropriate.

Dated: July 1, 2022.                           Respectfully submitted,

**/s/ ANDREW R. FRISCH**
Andrew R. Frisch
Florida Bar No. 27777
MORGAN & MORGAN, P.A.
8151 Peters Road, 4th Floor
Plantation, Florida 33324
Tel: (954) WORKERS
Fax: (954) 327-3013
E-Mail:  afrisch@fortheopeople.com

*Attorneys for Plaintiff*

*Prime Steak, Stone Crab & Oyster Bar,* 2009 WL 5851465, *5 (S.D.N.Y. 2009) (awarding 33% of common fund as attorneys' fees).

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 1st day of July, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send a notice of electronic filing to all counsel of record.

<u>**/s/ ANDREW R. FRISCH**</u>
ANDREW R. FRISCH