# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

| | |
|---|---|
| JHON SARMIENTO, Individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 0:20-cv-61249-WPD |
| SCHEAR CONSTRUCTION, LLC, a Florida Limited Liability Company, ) ) ) | |
| Defendant. ) | |

**SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS**

This Settlement Agreement and Release of Claims (the "Agreement") is entered into by and between JHON SARMIENTO (the "Named Plaintiff"), individually and on behalf of the class of individuals that he seeks to represent, and SCHEAR CONSTRUCTION, LLC, a Florida limited liability company ("Defendant") (together with Named Plaintiff, the "Parties").

**RECITALS**

WHEREAS, the Named Plaintiff filed suit against Defendant in the United States District Court for the Southern District of Florida, Case No. 0:20-cv-61249-WPD alleging that Defendant owes them overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the Virgin Islands Fair Labor Standards Act ("Virgin Islands FLSA"), 24 V.C.I. §1 *et. seq.* ("the Lawsuit"); and

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released FLSA Claims (as hereinafter defined) between the Participating Class Members (as hereinafter defined) and Defendant and all claims between the Named Plaintiff and Defendant, including all claims asserted in the Lawsuit; and

WHEREAS, Defendant denies all of the allegations made by the Named Plaintiff in the Lawsuit, denies that it failed to pay, or that it owes the Named Plaintiff overtime compensation, and further denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit. Nonetheless, without admitting or conceding any liability, wrongdoing, or damages whatsoever, Defendant has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Lawsuit; and

WHEREAS, on November 18, 2021 and April 13, 2022, the Parties participated in mediation sessions of this matter via Zoom video conference, which were conducted by

1

experienced collective action mediator Neil Flaxman, Esq. (the "Mediator"), in which a resolution was reached between the Parties resulting in this Agreement; and

WHEREAS, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendant in the Lawsuit, conducted interviews with putative collective members, obtained and reviewed documents relating to Defendant's compensation policies and job descriptions, and analyzed payroll data, and retained an expert forensic account to analyze the data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Lawsuit, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, and that there was a risk that a class would not be certified or would eventually be decertified, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Named Plaintiff and Class Members.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Lawsuit on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1    "**Agreement**" means this Settlement Agreement and Release of Claims.

1.2    "**Approval Order**" means the Order entered by the Court approving the terms and conditions of this Agreement and directing the manner and timing of providing Notices to the Class Members.

1.3    "**Laborer Employees**" includes all current and former laborer employees of Defendant who held the job titles of Laborer, Foreman, Carpenter, Taper, Construction Superintendent, Apprentice or any similar titles Defendant employed in the relevant circumstances and timeframes as set forth in the Complaint.

1.4    "**Claim Form**" means the two "Claim Questions" set forth on page 2 of the Notice in **Exhibit A**, in the form approved by Defendant and Class Counsel and subject to Court approval, which each Class Member must complete in full and return, as set forth herein, to recover a portion of the Net Settlement Amount.

1.5    "**Class Counsel**" or "Plaintiffs' Counsel" means Morgan & Morgan, P.A.

1.6    "**Class Members**" means any and all current and former Employees employed by Defendant in the U.S. Virgin Islands during the period and circumstances as set forth in the Complaint (the "**Relevant Period**"). This is the group to whom Notice will be sent.

1.7     "**Court**" means the United States District Court for the Southern District of Florida.

1.8     "**Defendant**" means Schear Construction, LLC, a Florida limited liability company.

1.9     "**Defendant's Counsel**" means Jesse I. Unruh, Esq. of Spire Law, LLC.

1.10    "**Effective Date**" shall be the date the Court Approves this Settlement Agreement and Release of Claims.

1.11    "**Employer Payroll Taxes**" means any and all taxes and withholdings that Defendant is required to make arising out of or based upon the payment of employment compensation in the Lawsuit, including without limitation FICA, FUTA, SUTA and other federal, state, or territorial tax obligations.

1.12    "**Lawsuit**" means the case of *Jhon Sarmiento v. Schear Construction, LLC*, in the United States District Court for the Southern District of Florida, Case No. 0:20-cv-61249-WPD.

1.13    "**Maximum Settlement Amount**" means the maximum amount of Seven Hundred Thirty-Nine Thousand Eight Hundred Twenty-Five Dollars and Ninety-Seven Cents ($739,825.97), which Defendant has agreed to pay to fully resolve and settle the Lawsuit, including any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to or on behalf of Class Members and the Named Plaintiff. Defendant's Employer Payroll Taxes are not included in the Maximum Settlement Amount. Rather, Defendant's share of payroll taxes shall be paid by Defendant in addition to the Maximum Settlement Amount. The Settlement claims administrator's fees and costs are not included in the Maximum Settlement Amount and Defendant has agreed to pay for the claims administrator in this case. Under no circumstances will Defendant be required to pay more than the gross total of Seven Hundred Thirty-Nine Thousand Eight Hundred Twenty-Five Dollars and Ninety-Seven Cents ($739,825.97), plus any applicable Employer Payroll Taxes and the claims administrator's fees and costs.

Separate and apart from the amount due hereunder, Defendant agrees that it will reimburse Plaintiff and/or Plaintiff's Counsel in the amount of $5,005.00 for the cost of retaining forensic accountant Martin Williams, pursuant to the mediation agreement reached as a result of the mediation held November 18, 2021.

1.14    "**Named Plaintiff**" means Jhon Sarmiento.

1.15    "**Net Settlement Amount**" means the amount remaining of the Maximum Settlement Amount after deductions of Class Counsel's fees and costs as approved by the Court.

3

1.16 "**Notice**" means the Court-approved Notice of Settlement of Collective Action Lawsuit, *See* **Exhibit 1** (Notice is attached to the Settlement as **Exhibit A**).

1.17 "**Participating Class Member(s)**" shall mean those Class Members who timely return a completed Claim Form and the Named Plaintiff, and includes all opt-in Plaintiffs who previously submitted consents to join the Lawsuit and Michael Book, who shall all be deemed to have submitted a valid claim, without the necessity of submitting a Claim Form.

1.18 "**Parties**" shall mean, collectively, Named Plaintiff and Defendant.

1.19 "**Plaintiffs**" shall mean the Named Plaintiff and Participating Class Members.

1.20 "**Released Parties**" means Schear Construction, LLC and all of their parents, divisions, affiliates, subsidiaries, predecessors, successors, directors, partners, shareholders, principals, officers, members, fiduciaries, trustees, employee benefit plans and plan administrators, insurers, employees, attorneys, and agents.

1.21 The "**Settlement Claims Administrator**," also referred to as "**Claims Administrator**" will be RUST CONSULTING.

## 2. APPROVAL AND CLASS NOTICE

2.1 **Binding Agreement**: This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Lawsuit.

2.2 **Settlement Claims Administrator**: The Settlement Claims Administrator will be responsible for "scraping" the Class Member mailing list (provided by Defendant as set forth herein) against the National change of Address ("NCOA" or "NCOALink") data set maintained by the United States Postal Service ("USPS") prior to mailing out Notices to Class Members; mailing of Notices and Claim Forms to Class Members in accordance with the Court's Approval Order; responding to Class Member inquiries; resolving disputes relating to Class Members' settlement amounts; reporting on the state of the settlement to the Parties; calculating the Settlement Checks in accordance with the Court's Approval Order; calculating Class Members' share of taxes, distributing Settlement Checks to Class Members and withholding Class Members' share of taxes; remitting such tax payments (i.e., withheld class members' share of taxes) to the appropriate taxing authorities; providing Claim Forms to Defendant' Counsel and Class Counsel; providing redacted Claim Forms to Class Counsel suitable for filing; preparing a declaration regarding its due diligence in the claims administration process; providing counsel with any information related to the administration of the settlement upon request; and performing such other duties as the Parties may jointly direct or as are specified herein.

(A) Class Counsel will select the Settlement Claims Administrator with approval from

(A) Class Counsel will select the Settlement Claims Administrator with approval from Defendant, and such approval shall not be unreasonably withheld. The Settlement Claims Administrator shall be paid by Defendant and the Parties agree that administration costs are not anticipated to exceed $10,000 and shall endeavor to select a Settlement Claims Administrator that anticipates that administration of the claims shall not exceed that amount.

(B) The Parties will have equal access to the Settlement Claims Administrator and all information related to the administration of the settlement. The Settlement Claims Administrator will provide regular reports to the Parties regarding the status of the mailing of the Notices and Claim Forms to Class Members, the claims administration process, the substance and status of disputes raised by Class Members regarding the calculation of settlement awards, and distribution of the Settlement Checks.

(C) In the event of a dispute regarding a Class Member's Settlement Award, the Settlement Claims Administrator shall promptly report the nature of the dispute to Class Counsel and Defendant's Counsel, who will confer in good faith with the Settlement Claims Administrator in an effort to resolve the dispute. In the event counsel are unable to reach agreement, the Settlement Claims Administrator shall decide the dispute, and its decision shall be final and binding on the Parties.

## 2.3 Settlement Approval Motion

(A) Within 14 days of the date this Agreement has been signed by all Parties, and the Named Plaintiff who elects to do so has signed his individual settlement agreement, the Parties will draft a Motion for Approval of Settlement ("Approval Motion"). In connection with the Approval Motion, the Parties will submit to the Court a Notice of Settlement of Collective Action Lawsuit; a proposed distribution method for the individual settlement amounts for each Class Member; and a proposed Approval Order.

(B) In the Approval Motion, the Parties will request that the Court: (1) approve this Agreement as fair and reasonable; (2) dismiss the Lawsuit with prejudice; (3) award Class Counsel fees and costs; and (4) retain jurisdiction and order the clerk to keep the case open until 15 days after the final payments are due pursuant to the terms of this Agreement.

(C) If the Court denies the Approval Motion, unless the Parties agree to jointly seek reconsideration of the ruling or attempt to renegotiate the settlement based on the Court's orders and seek Court approval of a renegotiated settlement. Only in the event that all reasonable effort has been exercised in an attempt to secure court approval of this Settlement or one reasonably close in terms will this Lawsuit resume as if no settlement had been attempted. Defendant retains the right to contest whether the Lawsuit should be maintained as a collective or class action and to contest the merits of the claims being asserted in the Lawsuit. This

5

Agreement (including Exhibits) will not be used for any purpose in connection with the Lawsuit, any future litigation, or any other lawsuit, arbitration, administrative or other legal proceeding, claim, investigation, or complaint, except that the non-disclosure obligations herein will remain in effect.

**2.4   Notice to Class Members**

(A)   Within fourteen (14) days of the Court's issuance of an Approval Order, Defendant will provide the Settlement Claims Administrator, in electronic form, for all Class Members the following information: name, and current address from business records. Defendant agrees to re-run a list of current addresses from business records, but has no obligation to do additional searching for location of the Class Members. The Settlement Claims Administrator will "scrape" the mailing list provided by Defendant against the United States Postal Service NCOA database prior to mailing out the Notice to Class Members.

(B)   Within seven (7) days of the receipt of the Class List from Defendant, the Claims Administrator will mail to all Class Members, via First-Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Collective Action Lawsuit, Claim Form and an addressed postage-paid return envelope. The Notice shall state it is authorized and approved by the Court, inform the Class Members of their eligibility to participate in the Settlement by signing and returning the enclosed consent form, inform the Class Members of their obligation to respond to the questions stated on the Claim Form, clearly state the deadline by which the Class Member must return the Claim Form to participate in the settlement, inform the Class Member of the acceptable methods of transmitting the Claim Form, inform them of the general nature of the claims asserted in the Lawsuit, their rights as Class Members (including without limitation the right to be free from retaliation), specify the scope of the claims they release by virtue of participating in the settlement (including a release of all FLSA and USVI wage claims), state the legal effect of not participating in the settlement, advise them of their representation by Class Counsel at no cost if they choose, and provide them instruction on how to contact Class Counsel and/or the Claims Administrator if they have questions. The Claim Form shall be a form pursuant to which the Class Member agrees to participate in this settlement, accept representation by Class Counsel and releases the Released FLSA Claims as specified herein. The Claim Form shall also require the Class Member to provide his or her name, date of signing, current address email address and phone number and last four digits of their social security number and which can be returned by methods set forth by the Claims Administrator. The Claim Form shall advise the Class Member that the contact information is for use by Class Counsel, Defendant's Counsel, or the Claims Administrator only and will not be filed with the Court. Any Claim Form filed shall have such contact information redacted. Class Members will only be bound by this Settlement and will only be entitled to receive a share of the Net Settlement Fund if they return their completed, signed consent form postmarked (for Claim Forms returned by mail) or time/date stamped (for Claim Forms

6

returned by facsimile or email) within **forty-five (45) days** from the mailing of the Notice to them ("**Consent Deadline**").

(C)     The Claims Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the Post Office as undeliverable and shall attempt re-mailings as described in this Agreement. The Claims Administrator will notify Class Counsel and Defendant's Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.. No reminder notice of any type shall be sent. There shall be no other attempts to contact Class Members by the Claims Administrator or Counsel for Plaintiffs. Within 7 days of the Consent Deadline the Settlement Claims Administrator shall provide Class Counsel with a list of all Participating Plaintiffs and electronic copies of all timely received and completed Claim Forms, together with redacted copies of such Claim Forms suitable for filing with the Court.

## 2.5     Revocation

(A)     Upon receipt of the list of Participating Plaintiffs by Defendant, if the number of Participating Plaintiffs exceeds fifty-four (54) the Defendant shall have the option to revoke this Agreement by providing written notice to Class Counsel. If the Defendant exercises its option to Revoke this Agreement, no payments are due and this matter will revert to the state it was in prior to the formation of this Agreement and no statements or representations made as part of this Agreement shall be used against either Party or Party's counsel, and all discussions and documents shared as a part of the negotiations leading to this Agreement shall be inadmissible in evidence for any reason.

(B)     If the number of Participating Plaintiffs exceeds fifty-four, Defendant shall have fourteen (14) days to elect to revoke this Agreement. The Defendant may waive its right to revoke only by written notice from Defendant's counsel to Class Counsel. The fourteenth day following the receipt of the list of Participating Plaintiffs by Defendant is the **"Revocation Deadline"**.

## 2.6     Claim Forms and Settlement Checks

(A)     Plaintiff, Opt-in Plaintiffs, including Michael Book, andClass Members who timely returns a completed Claim Form shall be Participating Class Members, and will be issued a Settlement Check by the Settlement Claims Administrator in accordance with the Approval Order.

(B)     The Settlement Checks will be mailed to Participating Class Members by the Settlement Claims Administrator within five (5) days of the date that Defendant submit the portion of the Maximum Settlement Amount that is necessary to fulfill the terms of this settlement as described herein.

(C)     The following release language shall be included by the Claims Administrator on the back of each Settlement Check:

*My signature or negotiation of this check constitutes a full, final and complete release by me of Schear Construction, LLC and its parent subsidiary and affiliated entities, and their respective officers, directors and employees, for any and all unpaid wages, overtime and minimum wage type claims, including those that were or could have been asserted or alleged on my behalf in the matter Jhon Sarmiento v. Schear Construction, LLC, in the United States District Court for the Southern District of Florida, Case No. 0:20-cv-61249-WPD up to and including, the Effective Date, as well as my acknowledgement that I accept this check as payment in full for all claims asserted or alleged on my behalf in that Lawsuit.*

**3**.    **SETTLEMENT TERMS AND ADMINISTRATION**

**3.1    Settlement Amount**

(A)     Defendant agrees to pay the Maximum Settlement Amount of Seven Hundred Thirty-Nine Thousand Eight Hundred Twenty-Five Dollars and Ninety-Seven Cents ($739,825.97), which shall be the maximum amount necessary pursuant to the terms of this Agreement to fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to or on behalf of the Named Plaintiff, payments to Class Members, payment to the Settlement Claims Administrator's for fees and costs, and any and all taxes other than Employer Payroll Taxes. Under no circumstances will Defendant be required to pay more than the gross total of Seven Hundred Thirty-Nine Thousand Eight Hundred Twenty-Five Dollars and Ninety-Seven Cents ($739,825.97) Maximum Settlement Amount will be divided into four categories. **Category 1**, in the total amount of $251,845.71, is the amount that, upon approval by the Court, will be paid to counsel for Plaintiffs and represents payment of all attorneys' fees and costs associated with the Lawsuit,. **Category 2**, in the approximate amount of up to $487,980.26 consists of the **Net Settlement Amount** from which the potential Class Members will be eligible to be paid their pro rata share which shall be calculated using a predetermined "travel time analysis" based on the Class Member's responses to the two questions on their returned and completed Claim Form.

(B)     Within fourteen (14) days after the Revocation Deadline, Defendant will deliver to the Claims Administrator the attorney's fees and costs as well as all unpaid wages due to Plaintiff and all Participating Plaintiffs who shall thereafter issue payments for any wage payments for Participating Plaintiffs. Ninety (90) days thereafter, Defendant will deliver the to the Claims Administrator the amounts due for liquidated damages who shall thereafter issue payments for liquidated

damages amounts for Plaintiff and all Participating Plaintiffs.

(C) Class Members will have 120 days from the date of mailing to cash their Settlement Checks (the "Acceptance Period"). Class Members will be informed of the Acceptance Period in the Notices and on the Settlement Checks.

(D) Any unclaimed funds and un-negotiated Settlement Checks to Participating Class Members that remain uncashed 120 days after the date of mailing shall belong to Defendant. The Settlement Claims Administrator shall distribute any such amounts to Defendant within twenty (20) days after the last date on which a Participating Class Member may cash their Settlement Checks.

**3.2   Settlement Amounts Payable as Attorneys' Fees and Costs**

(A) In the joint Approval Motion, Class Counsel will seek an award of attorneys' fees in the amount of $249,945.32, plus costs in the amount of $1,900.39. Defendant will not oppose this application.

(B) The substance of Class Counsel's request for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the approval of the underlying settlement.

**3.3   Net Settlement Fund and Allocation to Class Members**

(A) The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

(B) A Class Member's estimated proportionate share of the Net Settlement Fund will be as allocated on the Microsoft Excel Spreadsheet titled "Sarmiento et al Settlement Allocation" attached hereto and incorporated herein by reference. By default, each Class Member shall be allocated the amount referenced in columns "S" and "T". Dependent on each Class Members answers to the two (2) questions on the claim form that amount may be upwardly modified.

**3.5   Tax Characterization**

(A) For tax purposes, the Class Members' payments shall be treated as back wages and liquidated damages as set forth in the Sarmiento et al Settlement Allocation spreadsheet.

(B) Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall

9

be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security Number on an IRS Form W-2. Payments treated as interest and/or liquidated damages pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security Number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to the terms of this Agreement shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(C)     Plaintiffs acknowledge and agree that each will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(B)).

(D)     The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Class Member receiving a Settlement Check.

## 4.     RELEASE

### 4.1     Release of Claims

By operation of the entry of the Approval of this Agreement, and except as to such rights or claims as may be created by this Agreement,

(A)     By signing and timely returning a completed Claim Form, all Class Members fully, finally and forever release, remise and discharge the Released Parties from all FLSA and U.S. Virgin Island FLSA wage and hour claims asserted in the Lawsuit (the "**Released FLSA Claims**"). The Released FLSA Claims include all claims for unpaid regular, straight time or overtime wages, any related wage and hour and wage payment law claims, all derivative benefit claims (both ERISA and non-ERISA benefits, including 401(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits), any state or local wage and hour or unpaid wages type of claims, interest on such claims, liquidated damages, penalties, and attorneys' fees and costs related to such claims, and all other available remedies and relief of any kind or nature whatsoever related to such claims, relating to Class Members' employment as a Laborer Employee with Defendant during the Relevant Period.

(B)     In addition to the Released FLSA Claims, the Named Plaintiff will first execute a separate Settlement Agreement and General Release to be prepared by Defendant, which will include, among other things, payment of additional consideration to the Named Plaintiff, their agreement to a full general release, and no re-hire provisions. The tax treatment of the payments made to Named Plaintiff pursuant to his individual settlement agreement will be addressed in said individual settlement agreement. A form of that separate Settlement Agreement and General Release is attached as **Exhibit B**.

10

(C)     Except as provided in this Agreement, and as detailed in the mediation agreement resulting from the Parties' first mediation session on November 18, 2021, Class Counsel and the Named Plaintiff, on behalf of the Class Members individually and collectively, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against the Released Parties for attorneys' fees or costs associated with Class Counsel's representation of the Class Members. Class Counsel further understands and agrees that Class Counsel's fees and costs, once approved by the Court, will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Lawsuit. The release, acquittal and discharge set forth in this paragraph shall not apply to any attorneys' fees or costs incurred in relation to any efforts to enforce the terms of this Agreement.

4.2     **Non-Admission of Liability:** Defendant denies that it violated the law in any manner asserted in, alleged in or related to the Lawsuit. Defendant has agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will: (i) provide substantial benefits to Defendant's members, (ii) avoid the further expense and disruption of Defendant's business due to the pendency and expense of litigation, and (iii) put the claims in the Lawsuit finally to rest. Nothing in this agreement shall be deemed, construed or used as an admission of liability, culpability, negligence, wrongdoing or unlawful conduct of any kind or nature whatsoever by or on behalf of Defendant or the Released Parties, or as an admission that a class should be certified for any purpose other than settlement purposes.

5.      **INTERPRETATION AND ENFORCEMENT**

5.1     **Cooperation Between the Parties; Further Acts:** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to effectuate this Agreement, including during any appeals, and to obtain the Court's approval of this Agreement and all of its terms and to defend this Agreement and the settlement from any legal challenge. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement. The Parties will fully cooperate with each other and with the Settlement Claims Administrator to accomplish, implement, and effectuate the terms of this Agreement, including but not limited to, the preparation and execution of documents necessary to implement this Agreement.

5.2     **No Assignment:** Class Counsel and Named Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action.

5.3     **Entire Agreement:** With the exception of the mediation agreement reached November 18, 2021 (which provided for Defendant pay the cost of Plaintiff's retained expert

11

account), this Agreement constitutes the entire, complete and integrated agreement between the Parties with regard to the subject matter contained herein, including all settlement terms, and supersedes all previous oral or written agreements, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement. This Agreement may not be amended or modified except by a writing duly signed by the Parties or their duly authorized representatives.

5.4 **Binding Effect:** This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiff and all Participating Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, trustees, attorneys, successors and assigns.

5.5 **Arms' Length Transaction; Materiality of Terms:** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6 **Captions:** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience or reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7 **Construction:** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.8 **Blue Penciling/Severability:** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable with the exception of the provisions of the Release contained herein, such finding shall not affect the validity of the remaining portions of this Agreement which will remain in full force and effect and will be construed and enforced to effect the purposes thereof to the fullest extent permitted by law.

5.9 **Governing Law:** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Florida, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10 **Continuing Jurisdiction of the Court:** The parties will request that the Court retain jurisdiction over the interpretation, implementation, and enforcement of the terms of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby, including any and all orders and judgments entered in connection therewith.

5.11 **Waivers, Etc.** To Be in Writing: No waiver, modification or amendment of the terms of

this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12    Non-Disclosure Pending Finalization and Publicity**

(A)    Prior to submission of the Motion to Approve Settlement the Named Plaintiff and his counsel will keep the terms, conditions and existence of the settlement and this Agreement strictly confidential (except to the extent necessary to advise the Named Plaintiff and any Class Members who contact Class Counsel) and will not contact, or comment to, the media about the settlement or this Agreement, or disclose, make known, discuss or relay orally, or in writing, electronically or otherwise, the existence or terms of the settlement or this Agreement, or any information concerning or discussions leading up to the settlement or this Agreement, prior to submission to the court for approval.

(B)    Any communication about the settlement to Class Members other than Named Plaintiff prior to the Court-approved mailing will be limited to a statement that a settlement has been reached and the details will be communicated in a forthcoming Court-approved notice.

(C)    Nothing in this Agreement shall prohibit Class Counsel and Defendant's Counsel from disclosing information concerning this Agreement to their respective employees and agents to the extent necessary to effectuate the terms of this Agreement. Moreover, nothing in this Agreement shall prohibit Defendant from disclosing information concerning this Agreement to its employees and agents to the extent necessary to effectuate the terms of this Agreement or who otherwise have a need to know the terms. The Parties may also disclose information concerning this Agreement to their respective counsel and tax, audit and legal advisors.

(D)    Nothing in this Agreement shall prevent Defendant or its Counsel from making any necessary, appropriate or required disclosures to Defendant's regulators, auditors and the like, or from complying with its obligations under the law.

**5.13    Return of Documents/Data:** Class Counsel will destroy all documents produced by Defendant and/or Defendant's Counsel (whether formally or for purposes of mediation) and shall delete all electronic records thereof within thirty (30) days of the last day on which Participating Class Members may cash their Settlement Checks, except as required

by Class Counsel's malpractice insurance and the Rules of Professional Conduct.

5.14   **When Agreement Becomes Enforceable; Counterparts:** This Agreement shall become binding upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.15   **Signature of Named Plaintiff:** This Agreement is valid and binding once signed by Defendant's authorized representative and the Named Plaintiff. Named Plaintiff agrees to sign this Agreement and by signing this Agreement are bound by the terms herein stated.

5.16   **Facsimile, Electronic and Email Signatures:** Any party may execute this Agreement by transmitting that signature page via facsimile, electronic signature or email to counsel for the other party. Any signature made and transmitted by facsimile, electronic signature or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, electronic signature or email

5.17   **Parties' Authority:** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Participating Class Members to the terms and conditions thereof.


**WE AGREE TO THESE TERMS:**


**DEFENDANT:**                                    **PLAINTIFF:**

**Schear Construction, LLC,**
**a Florida limited liability company**          **Jhon Sarmiento**

By: _David Gembala_                              _____

Its: ___David Gembala___                          JHON SARMIENTO

Date: ___06 / 24 / 2022___                        Date: _____

14

Doc ID: bfda4d2ce413d294925570455b567b1a2d76f5f8

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Sarmiento Final Settlement Agreement.pdf |
| **FILE NAME** | Sarmiento%20Final...t%20Agreement.pdf |
| **DOCUMENT ID** | bfda4d2ce413d294925570455b567b1a2d76f5f8 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

**This document was requested from app.clio.com**

## Document History

**SENT**
**06 / 21 / 2022**
20:19:38 UTC
Sent for signature to David Gembala (dgembala@schearusa.com)
from sarah@spirelawfirm.com
IP: 75.28.167.118

**VIEWED**
**06 / 24 / 2022**
14:17:46 UTC
Viewed by David Gembala (dgembala@schearusa.com)
IP: 74.9.193.154

**SIGNED**
**06 / 24 / 2022**
14:18:53 UTC
Signed by David Gembala (dgembala@schearusa.com)
IP: 74.9.193.154

**COMPLETED**
**06 / 24 / 2022**
14:18:53 UTC
The document has been completed.

Powered by **HELLOSIGN**

by Class Counsel's malpractice insurance and the Rules of Professional Conduct.

5.14    **When Agreement Becomes Enforceable; Counterparts:** This Agreement shall become binding upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.15    **Signature of Named Plaintiff:** This Agreement is valid and binding once signed by Defendant's authorized representative and the Named Plaintiff. Named Plaintiff agrees to sign this Agreement and by signing this Agreement are bound by the terms herein stated.

5.16    **Facsimile, Electronic and Email Signatures:** Any party may execute this Agreement by transmitting that signature page via facsimile, electronic signature or email to counsel for the other party. Any signature made and transmitted by facsimile, electronic signature or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, electronic signature or email

5.17    **Parties' Authority:** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Participating Class Members to the terms and conditions thereof.

**WE AGREE TO THESE TERMS:**

**DEFENDANT:**                                              **PLAINTIFF:**

**Schear Construction, LLC,**
**a Florida limited liability company**                    **Jhon Sarmiento**

By: _____                        _____
                                                           Jhon Sarmiento (Jun 27, 2022 14:08 EDT)
Its: _____                       JHON SARMIENTO

Date: _____                        Date: Jun 27, 2022 _____

14

# PLEASE SIGN SETTLEMENT AGREEMENT ASAP

Final Audit Report                                                    2022-06-27

| | |
|---|---|
| Created: | 2022-06-27 |
| By: | Andrew Frisch (jrivera@forthepeople.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAuJ2qqpDxwoFx0IM_zCPQmUDXRZ3V4Axh |

## "PLEASE SIGN SETTLEMENT AGREEMENT ASAP" History

🗎 Document created by Andrew Frisch (jrivera@forthepeople.com)
2022-06-27 - 1:29:27 PM GMT- IP address: 165.225.32.126

✉ Document emailed to jhonalejandros1@gmail.com for signature
2022-06-27 - 1:30:00 PM GMT

🗎 Email viewed by jhonalejandros1@gmail.com
2022-06-27 - 1:30:01 PM GMT- IP address: 66.249.92.193

✉ Email sent to Andrew Frisch (jrivera@forthepeople.com) bounced and could not be delivered
2022-06-27 - 1:30:20 PM GMT

✐ Document e-signed by Jhon sarmiento (jhonalejandros1@gmail.com)
Signature Date: 2022-06-27 - 6:08:09 PM GMT - Time Source: server- IP address: 104.190.185.133

✔ Agreement completed.
2022-06-27 - 6:08:09 PM GMT

Adobe Acrobat Sign